WILLIAM GRZYBOWSKI *vs.* THE CONNECTICUT COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued December 9th, 1932—decided February 21st, 1933.

*Edwin H. Hall,* with whom, on the brief, was *Walter A. Mulvihill,* for the appellant (defendant).

*Samuel Campner,* with whom was *Edward L. Reynolds,* for the appellee (plaintiff).

AVERY, J. The jury in this case brought in a verdict in favor of the plaintiff, which the defendant moved to set aside. This motion was denied by the trial court; and the only question presented in this appeal is the correctness of the court's action, the claim of the defendant being that the injuries suffered by the

plaintiff were not shown to have been caused by the defendant.

The accident occurred at about eleven-thirty at night on December 20th, 1930, at the corner of State and Humphrey Streets, New Haven. From the evidence, the jury might reasonably have found these facts: State Street runs north and south; it has a double trolley line, the tracks being ten feet from center to center. On the north side of Humphrey, State Street is forty feet wide from curb to curb. The plaintiff attempted to cross from the east to the west side on the crosswalk north of Humphrey. His purpose was to board a southbound trolley car, and he was running. When he reached a point at about the center of the northbound trolley track, he was struck by the front fender of a Ford automobile, which was being driven north. His legs appeared to go from under him; and he fell on the southbound trolley track, his head being upon the easterly rail and his feet projecting over the westerly. While in this position, he was struck by a southbound trolley car of the defendant company, and, the fender being raised, was rolled over and over under it, and pushed forward about fifteen feet before the car stopped. He was found beneath, unconscious; the flange of the wheel had his right leg pressed to the rail; the imprint of the flange and wheel was on his leg, and his hand was alongside of his head. He was taken out and removed to the hospital, where his injuries were found to be: (a) a compound fracture of the right tibia near the ankle; the flesh on the inner side of the right leg was torn away until the bone was exposed, the injury having the appearance of a friction burn from scraping, and the outside of the right ankle joint was lacerated, with dirt ground into it; (b) a practical traumatic amputation of the ends of the left index and middle fingers; (c) a crush-

ing injury to the cervical spine, the fourth and fifth cervical vertebrae being out of line; and (d) a cerebral concussion with lacerations of the scalp, abrasions and contusions of the face, and hemorrhages around both eyes.

The defendant claims that these injuries might as well have been received by the collision with the automobile as with the trolley car; and that it is a matter of mere speculation whether this defendant caused any of them. In a case of this character, the burden rests upon the plaintiff to show what part of his injuries were caused by the negligent act of the defendant. *Deutsch* v. *Connecticut Co.,* 98 Conn. 482, 490, 119 Atl. 891. Where contributive action by two parties, there being no concert between them, causes damage to a third party, there may often be a practical difficulty in distinguishing between what were the consequences of the earlier accident and of the later, but there is no legal difficulty in distinguishing between them. *Post* v. *Hartford Street Ry. Co.,* 72 Conn. 362, 367, 44 Atl. 547. The defendant is liable for those damages which it is reasonably probable resulted from his negligence. *Hedberg* v. *Cooley,* 115 Conn. 352, 355, 161 Atl. 665; *Johnson* v. *Connecticut Co.,* 85 Conn. 438, 440, 83 Atl. 530. If the evidence is sufficient to show a reasonable probability that these injuries resulted from the negligence of the defendant, it is liable therefor. *Witkowski* v. *Goldberg,* 115 Conn. 693, 163 Atl. 413.

The plaintiff's left side was exposed to the impact of the front fender of the automobile as he ran across the street in front of it. There was testimony that he was struck at about the knee. As a matter of common knowledge, the front fender of an automobile is about that high from the ground. The plaintiff's right leg, however, was broken near the ankle. If, in connec-

tion with the injuries to the right leg itself, the evidence is considered as to how the plaintiff was struck by the Ford automobile, and as to the manner in which he lay thereafter upon the track in front of the oncoming trolley car, with his feet across the rail, and further, that when the trolley was stopped, the flange of its wheel was pressing his right leg to the rail, the jury could reasonably have reached the conclusion that the injuries to the leg were caused by the trolley car. The position of the plaintiff's body under the car and the fact that there was evidence that the bones of the fingers of his left hand were practically amputated by the accident were sufficient to justify the jury in finding that these injuries were caused by the wheel of the trolley car.

With regard to the injuries to plaintiff's head and neck, there was a considerable divergence among the witnesses as to just how the plaintiff was thrown after being struck by the automobile. The motorman testified that the plaintiff was thrown fifteen feet in the air and fell upon the track, while other witnesses testified that he was not thrown into the air at all, but seemed to be turned around and fell. He lay on the track at the most but a few seconds when struck by the trolley car. No one testified that the plaintiff was hit in the head by the automobile, or fell upon his head; nor was there any testimony as to whether he moved at all in the brief interval of time while he lay upon the track before being struck by the trolley car. There was testimony that the car was equipped with a safety fender which was not dropped but struck the plaintiff, and he rolled under it. In front of the wheels were snow scrapers of metal, the blades being about twelve inches long and seven or eight inches wide. In this state of the evidence, taking into consideration the character of the injuries, the cerebral

concussion with lacerations of the scalp, abrasions and contusions of the face and hemorrhages around both eyes, the testimony which the jury might believe as to the manner in which the plaintiff fell and was exposed upon the tracks, and as to the manner in which he was rolled and pushed by the trolley car after it struck him, there was sufficient basis for the jury to conclude that the injuries to the plaintiff's head and neck were caused by the trolley car and not by the previous collision with the automobile.

The case of *Deutsch* v. *Connecticut Co., supra,* relied upon by the appellant, is not in point. In that case, the plaintiff negligently walked in front of a moving trolley car and was struck by the fender and rolled under it for a considerable distance. The car then backed, rolling the plaintiff backward. The injuries in that case were broken ribs, and we held that the plaintiff could not recover for the injuries received when the car was moving forward because of his contributory negligence, and that he could not recover for the injury when the car was backing upon the ground of supervening negligence because it did not appear what part of the injuries, if any, were received by him when the car was backing.

The amount of the verdict in the present case was $7500. In addition to the injuries hereinbefore mentioned, there was evidence that the plaintiff was employed in pressing suits and dresses, and received therefor compensation of from $21 to $25 a week, and that the permanent loss of parts of two fingers of his left hand would seriously interfere with his ability to work at that occupation. There was also evidence that the scar tissue formed over the wound upon his ankle is apt to break down at any time, and ulcerate; and that this condition is permanent. It was further testified that he was in the hospital for nearly three

months, the bill being $428.53, with a doctor's bill of $786, and a prospective future medical expense of from $75 to $100; and also a loss of earnings while incapacitated by reason of the accident. In view of the evidence, we cannot say that the verdict of the jury was excessive.

The court did not err in refusing to set aside the verdict.

There is no error.

In this opinion the other judges concurred.