### ÆTNA LIFE INS. CO. v. CAFFEE.

(Circuit Court of Appeals, Fifth Circuit. January 26, 1923.)

No. 3973.

**1. Appeal and error ⬤⟿1040(10)—Overruling exception to declaration on accident policy alleging automobile left the road held harmless.**

Where a declaration to recover on a policy insuring against accidental death was admittedly good if it had omitted therefrom the allegation that the automobile in which insured was riding just prior to his death left the highway and ran down the hill toward a lake, the overruling of an exception that such allegation, having been unnecessarily made, should have included a statement of the facts which caused the automobile to leave the highway, was harmless to defendant, who did not claim to have been misled, surprised, or embarrassed in its defense.

**2. Evidence ⬤⟿555—Opinion of expert held based on facts already stated.**

In an action on an accident policy for death of insured, the admission of an expert's testimony that in his opinion death was caused by concussion of the brain, because the symptoms indicated either apoplexy or concussion, and apoplexy would have been discoverable upon the post mortem, was not erroneous, because he had not stated the facts upon which his opinion was based, where he had described the patient's symptoms and stated that there had been an injury to the brain, and testified he attended the autopsy, which failed to disclose a brain injury.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
286 F.—42

3. **Appeal and error** ⚫➠1048(2)—**Admitting opinion of expert without facts supporting it is cured by subsequent evidence of facts.**

Even if it was error to admit the opinion of an expert because it was based on facts not yet disclosed by him, the error was cured by afterwards bringing out all of the facts within the knowledge of the witness.

4. **Insurance** ⚫➠668(11)—**Circumstantial evidence of accidental death for jury.**

Evidence that insured in his automobile was approaching a curve on the lake shore, that he was seen to attempt to bring the machine back to the road after the left wheels had run off from it, but that, notwithstanding his efforts, it ran down the bank and was afterwards found with its front axle bent where it had struck the pile of a wharf, and with the insured lying on the ground at the edge of the water, *held* sufficient to require submission to the jury of the question of death by an accident, even though no witness saw the insured thrown from the automobile, so that a directed verdict for defendant on the ground that an accident could be inferred only by presumption on presumption was properly denied.

5. **Trial** ⚫➠237(1)—**Requested charge to find for defendant if jury were in doubt was properly refused.**

In an action upon an accident insurance policy, a requested charge to find for defendant if the jury were in doubt as to the cause of the death of insured was properly refused, since the jury might have been in serious doubt, and still have believed from a preponderance of the evidence that the death was due to that cause.

In Error to the District Court of the United States for the Southern District of Florida; Rhydon M. Call, Judge.

Action at law by Matilda Caffee against the Ætna Life Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Henry P. Adair and James A. Franklin, both of Jacksonville, Fla. (Knight & Adair, of Jacksonville, Fla., on the brief), for plaintiff in error.

Don Register, of Winterhaven, Fla., and Herbert S. Phillips, of Tampa, Fla., for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. This is a writ of error, sued out by the defendant, Ætna Life Insurance Company, to a judgment in favor of the plaintiff, Matilda Caffee.

The suit is upon a policy of insurance by which plaintiff's husband was insured by the defendant against "loss resulting directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental means." The policy provides for the payment of $5,000 to the plaintiff in the event the death of the insured should result from such injuries.

The declaration is in two counts. The first count contains the following allegations:

"The said automobile in which said insured was riding and which was being driven by him suddenly and accidentally left the road and ran violently and rapidly down an embankment and upon, against, and astride a small dock at the edge of a lake some 40 feet, more or less, from the point where said automobile left said road, and upon, against, and astride said dock and against a post on the right-hand side thereof said automobile came to a stop so suddenly that said Ben V. Caffee was by the sudden stopping of said automobile as

⚫➠For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

aforesaid accidentally thrown from said automobile upon and against the ground with such great force and violence that said Ben V. Caffee thereby solely in and on account of being so violently and forcibly thrown from said automobile sustained a concussion of the brain, from and on account of which, directly and independently of all other causes, said Ben V. Caffee died," etc.

The second count differs from the first in that, instead of alleging that death was due to concussion of the brain, it alleges that the nature of the injury was unknown to plaintiff. The defendant interposed a demurrer, and also a motion for compulsory amendment, based upon the grounds that the declaration was indefinite and uncertain. The demurrer and the motion were both overruled.

The evidence without conflict developed the following state of facts: Plaintiff's husband, Ben V. Caffee, the insured, was a physician, and on the day of his death left home in his automobile, which he was driving, for the purpose of making professional calls. He was seen by several witnesses while he was driving his automobile along an asphalt highway in the direction of the residence of a patient whose name was on his visiting list. While driving down a steep hill, and at a point where the road curves sharply away from a lake, the left wheels of the automobile were seen to leave the road, and Caffee was seen making an effort to turn the automobile back on to the road; but after it had gone a few feet it departed from the road and went down the hill toward the lake. Almost immediately thereafter the automobile was found resting against a small dock at the edge of the lake, in an upright position, but tilted to the left, with the left door open and the front axle bent against one of the dock posts. Dr. Caffee was found in an unconscious condition a few feet to the left of the automobile with his head doubled up under his shoulder, and with his raincoat in the position of having been thrown over the upper part of his body. His head was within about a foot of the edge of the lake, and was resting upon hard, wet sand, in which there was a slight depression. He was removed to a house nearby and attended by several physicians, and died about seven hours later without regaining consciousness.

The tracks of the automobile indicated that just before it struck the dock it turned abruptly to the left and away from a pipe line two or three feet above the ground.

There was conflict in the evidence as to cause of death. There were no visible signs of injury, and an autopsy held several weeks after Dr. Caffee died failed to disclose any brain injury. It was the opinion of Dr. Sullivan, one of the physicians, based upon symptoms immediately preceding death, and upon the autopsy, that the cause of death was concussion of the brain. This witness was of the opinion that Dr. Caffee was suffering from a brain injury, which he thought was apoplexy until the autopsy failed to disclose that there had been a hemorrhage. Other physicians, while conceding the possibility that death could have been caused by concussion, expressed the opinion that it was in fact caused by uræmic poisoning.

The trial court overruled an objection, and noted an exception, to the questions calling for the opinion of Dr. Sullivan, based both upon symptoms before death and upon the autopsy, as to the cause of death.

The court also refused to direct a verdict for the defendant, and to charge the jury to find for it if they were in doubt as to the cause of Caffee's death. The defendant excepted to these rulings. The court charged the jury that plaintiff could not recover if death was caused wholly or in part by disease or natural causes, and that the burden was upon the plaintiff to prove her case by a preponderance of the evidence.

The defendant contends that the trial court erred: (1) In overruling the demurrer to the declaration and denying its motion for compulsory amendment; (2) in overruling objections to the questions which elicited from Dr. Sullivan testimony to the effect that in his opinion the cause of Caffee's death was concussion of the brain; (3) in refusing to direct a verdict for the defendant; and (4) in refusing to charge the jury to find for the defendant if they were in doubt as to the cause of Caffee's death.

[1] 1. It is conceded that the declaration would have been good if it had omitted altogether the allegation that the automobile left the highway. The contention is that the allegation, having been unnecessarily made, should have included a statement of the facts which caused the automobile to behave as it did. The criticism is exceedingly technical. The defendant does not claim to have been misled, surprised, or embarrassed in its defense in any way. If any error was committed in sustaining the declaration, which we are very far from holding, it was harmless.

[2, 3] 2. It is insisted that Dr. Sullivan should not have been permitted to state his opinion as to the cause of death until he had first stated all the facts within his knowledge. Before the questions objected to were propounded, this witness had described the symptoms shown by the patient, and stated he had come to the conclusion, that there had been an injury to the brain, and had further testified that he attended the autopsy, and that it failed to disclose a brain injury. He then testified, in answer to the questions objected to, that in his opinion death was caused by concussion of the brain, and proceeded to give his reasons for that opinion, by stating that the patient was suffering either from apoplexy or from concussion; that apoplexy produces hemorrhage and is discoverable upon a post mortem examination, while such an examination may not disclose a concussion of the brain. The questions were not based upon any undisclosed facts within the knowledge of the witness, and therefore there was not, as we think, any error in overruling the objections to them. But, if there was error, it was afterwards cured by bringing out all the facts within the knowledge of this witness.

[4] 3. It is insisted there was no competent proof of an accident. The argument is that only by basing inference upon inference, and piling presumption upon presumption, is the conclusion to be reached that an accident occurred, and that such method of proof is repudiated in United States v. Ross, 92 U. S. 281, 23 L. Ed. 707. We do not think the cited case sustains the argument made in this case. Here the fact to be established is that Dr. Caffee was thrown from his automobile. Although it is true there was no direct evidence of that fact; yet the circumstances relied on to establish it are shown by direct evidence.

Such circumstances are: The finding of the body and its position on the ground; the depression in the sand; the automobile leaving the highway; its tilted and injured condition; and its position against the dock. Testimony given by several witnesses to the effect that Dr. Caffee was driving his automobile, taken in connection with his apparent effort to drive back upon the highway, the avoidance of the pipe line, and the course taken to the dock at the edge of the lake, is sufficient to justify the jury in reaching the conclusion that unconsciousness did not occur prior to the time the automobile ran against the dock. If the jury believed this evidence, it was within their province to reject the inference, supported by defendant's evidence, either that Dr. Caffee became unconscious while driving along the highway, or that uræmic poisoning caused or contributed to his death. Under defendant's contention, it would be practically, if not quite, impossible to prove an accident by circumstantial evidence. Inferences to be drawn from the circumstances shown by direct evidence in the case were for the jury, and the trial court correctly refused to direct a verdict for the defendant.

[5] 4. It hardly seems necessary to say that no error was committed in refusing to charge the jury to find for the defendant if they were in doubt as to the cause of the death of the insured. The jury might have been in serious doubt, and yet they might well have believed from a preponderance of the evidence, as they evidently did, that death was due to the cause alleged in the declaration.

The judgment is affirmed.